# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTILIA H., an Individual,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>Defendant. | Case No.: 2:18-09181 ADS<br><br>MEMORANDUM OPINION AND ORDER |

## I. **INTRODUCTION**

Plaintiff Otilia H.[1] ("Plaintiff") challenges the Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The Complaint, and thus the docket caption, do not name the Commissioner. The parties list Nancy A. Berryhill as the Acting Commissioner in the Joint Submission. On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

-1-

of her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff contends that the Administrative Law Judge ("ALJ") improperly rejected the opinion of the consultative psychologist. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II. PROCEEDINGS BELOW

### A. Procedural History

Plaintiff protectively filed her application for DIB on July 30, 2015, alleging disability beginning April 22, 2015. (Administrative Record "AR" 137-38). Plaintiff's claims were denied initially December 10, 2015 (AR 53), and upon reconsideration on February 24, 2016 (AR 88-92). A hearing was held before ALJ Mary L. Everstine on July 31, 2017. (AR 38-52). Plaintiff, represented by counsel, appeared and testified, through a Spanish interpreter, at the hearing, as did a vocational expert, Kelly Bartlett. (Id.)

On November 16, 2017, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[3] (AR 18-37). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on August 24, 2018. (AR 1-9). Plaintiff then filed this action in District Court on October 25, 2018, challenging the ALJ's decision. [Docket ("Dkt.") No. 1].

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

On April 8, 2019, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. [Dkt. Nos. 16, 17]. The parties filed a Joint Stipulation on July 8, 2019. [Dkt. No. 18]. The case is ready for decision.[4]

### B. Summary of ALJ Decision After Hearing

In the decision (AR 24-34), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[5] 20 C.F.R. § 404.1520(a). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since April 22, 2015, the alleged onset date. (AR 26). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) history of excision of left acoustic neuroma with cranioplasty in September 2006 with left ear hearing loss; (b) intermittent vertigo; (c) headaches; and (d) dysthymic disorder. (AR 26). At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)." (AR 26).

---

[4] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 9, 10].

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[6] to perform light work as defined in 20 C.F.R. § 404.1567(b),[7] except:

> no work at unprotected heights or operating hazardous machinery; no work requiring bilateral hearing; no loud background noises without use of ear protection; and no greater than simple routine tasks.

(AR 28).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff is capable of performing her past relevant work as a packager/sorter. "This work does not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity (20 CFR 404.1565)." (AR 33-34). With this finding, the ALJ did not proceed to **step five**. Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 22, 2015, through the date of the decision, November 16, 2017. (AR 34).

---

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[7] "Light work" is defined as
> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

## III. ANALYSIS

### A. Issue on Appeal

Plaintiff raises one issue for review: whether the ALJ failed to provide specific and legitimate reasons to reject the opinion of the consultative psychologist? [Dkt. No. 18, Joint Stipulation, p. 4].

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc.

Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Error in a social security determination is subject to harmless error analysis. Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path may reasonably be discerned." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).

### C. **The ALJ Properly Evaluated The Medical Evidence**

Plaintiff contends that the ALJ erred in rejecting the moderate limitations assessed by the consultative psychological examiner, Kara Cross, Ph.D. Defendant argues that the ALJ gave proper weight to Dr. Cross' opinion.

#### 1. Standard for Weighing Medical Opinions

The ALJ must consider all medical opinion evidence. 20 C.F. R. § 404.1527(b). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons. Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted

by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1216).

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

As noted above, an RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1). Only the ALJ is responsible for assessing a claimant's RFC. See 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

2. The Psychological Evaluation At Issue

On October 24, 2015, Dr. Cross performed a Comprehensive Psychological Evaluation/Complete Mental Status Evaluation of Plaintiff, at the request of the agency, and submitted a seven-page written summary of evaluation. (AR 282-88). The

prognosis assessed by Dr. Cross states: "From the psychiatric standpoint, the claimant's condition is deemed FAIR." (AR 287).

In the Functional Assessment section of Dr. Cross' report, she gave the following opinions of Plaintiff:

> Dr. Cross assessed that Plaintiff had "No Limitations" in (1) Ability to understand safety rules and regulations and to maintain safety on the job; (2) Ability to accept instructions from supervisors; and (3) Ability to perform work activities without special or additional supervision.
>
> Dr. Cross assessed that Plaintiff was "Not Significantly Limited" in (1) Ability to understand, remember and carry out simple one or two step task instructions; (2) Ability to do detailed and complex tasks; (3) Ability to associate day to day work activity; and (4) Ability to relate to co-workers and the public in an appropriate manner.
>
> Dr. Cross assessed that Plaintiff was "Moderately Limited" in (1) Ability to understand, remember, carry out simple one or two step job instructions over an 8 hour day 40 hour work week without emotionally decompensating; (2) Ability to do detail and complex tasks over an 8 hour day 40 hour work week without emotionally decompensating; (3) Ability to maintain concentration and attention; (4) Ability to maintain reasonable persistence and pace; and (5) Ability to maintain regular attendance in the work place and perform activities on a consistent basis.

(AR 287-88).

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons to reject the moderate limitations assessed by Dr. Cross. [Dkt. No. 18, p. 4].

### 3. The ALJ Gave Proper Weight to the Medical Opinion

As set forth above, the ALJ found that Plaintiff had the RFC to perform light work with certain exceptions, including "no greater than simple routine tasks." (AR 28). In support of this RFC, the ALJ gave persuasive weight to the opinion of Dr. Cross, stating:

> Persuasive weight is given to the opinion by the psychological CE at [AR 282-88], based on supportability with medical signs and objective findings, consistency with the record, and area of specialization. As

noted above, the claimant reported a minimal history of mental health treatment, naming a Dr. Montes as her psychologist although the medical record fails to provide documentation of treatment by Dr. Montes. She had a generally normal mental status exam, presenting as cooperative, open, friendly and although she exaggerated her complaints, she did not show evidence of manipulation. She had normal thought processes, denied any auditory or visual hallucinations, had normal speech, normal orientation to person, place, time and purpose, had normal memory, adequate fund of knowledge, normal concentration and calculation, and normal judgment and reasoning. Although she had dysthymic mood, her affect was congruent with mood. The claimant reported engaging in activities of daily living of running errands, shopping, performing household chores, going for short walks, paying bills, managing money, maintaining "good relationships" with family and friends. On a daily basis, the claimant was capable of bathing, dressing, picking up after herself, sweeping, vacuuming, folding the laundry, cooking, using a microwave oven, listening to the radio, using a cell phone, using a landline phone, reading, calling friends, and having family visit her. Thus, based on the claimant's activities, a normal mental status exam, and general lack of psychological abnormalities, the opinion by the psychological CE that the claimant was not significantly limited in performing simple repetitive tasks despite dysthymic disorder is given persuasive weight.

(AR 32).

Accordingly, contrary to Plaintiff's arguments, the ALJ did not reject any of the limitations assessed by Dr. Cross. Nor did the ALJ simply ignore the "moderate limitations" as Plaintiff also argues. Rather, the ALJ did a detailed review of the findings and assessments of Dr. Cross in the decision.[8]

---

[8] In analyzing and holding at step three that Plaintiff does not have an impairment or combination of impairments that meets a listed impairment, the ALJ considered whether the "paragraph B" criteria were satisfied. In finding that the criteria were not satisfied, the ALJ thoroughly reviewed many of the "mild" and "moderate" limitation findings of Dr. Cross. (AR 26-28). The ALJ also stated at the conclusion of this section that Plaintiff's assessed RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (AR 28). Thus, the ALJ did not ignore the moderate limitations as Plaintiff argues; rather, the ALJ explicitly stated the limitations are reflected in the assessed RFC.

Plaintiff would like for this Court to reverse and remand so that the ALJ can expressly state the weight that should be given to the "moderate limitations" assessed in Dr. Cross' report.[9] There is no reason why this case needs to be remanded for this sole purpose when it is clear that the ALJ considered the entirety of Dr. Cross' report in giving it persuasive weight and assessing an RFC with "no greater than simple routine tasks." See Ford v. Saul, No. 18-35794, 2020 WL 829864, at *9 (9th Cir. Feb. 20, 2020) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (quoting Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). Moreover, Plaintiff has not explained how any of her mental limitations are sufficiently restrictive to ultimately preclude her from performing work. See, e.g., Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (explaining the Ninth Circuit has not "held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation"); Ball v. Colvin, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) ("As the ALJ found that Plaintiff's mental impairments were minimal, the ALJ was not required to include them in Plaintiff's RFC."); Sisco v. Colvin, 2014 WL 2859187, at *7-8 (N.D.

---

[9] Plaintiff rather shockingly changes Dr. Cross' assessed limitations from "moderate" to "significant" in the reply section of the Joint Stipulation. [Dkt. No. 18, pp. 10-12]. The assessed limitations at issue are only referred to as "moderate" by Dr. Cross and it is disingenuous to argue that they are of any more significance than that specifically stated by the examining consultant.

Cal. June 20, 2014) (ALJ not required to include in RFC assessment mental impairment that imposed "no significant functional limitations"). Here, Dr. Cross simply assessed some "moderate" limitations in deeming Plaintiff's condition "fair." (AR 287). See Shapiro v. Berryhill, 2020 WL 836830, at *6 (D. Nev. Feb. 20, 2020) (concluding that the ALJ properly translated claimant's mental impairment into an RFC that accounted for moderate limitations).

Furthermore, it is the role of the ALJ, and not this Court, to interpret and resolve any ambiguities in the medical records. See Tommasetti, 533 F.3d at 1041-42 ("The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that it is the ALJ's job to resolve any conflicts). See Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (citation omitted); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.") There is no reason why this case needs to be remanded for the sole purpose of having the ALJ expressly state how she incorporated Dr. Cross' assessed moderate limitations into the RFC. Indeed, an ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012.

Finally, as the ALJ's assessed RFC aligns with Dr. Cross' opinion by limiting Plaintiff to light work with no greater than simple routine tasks, any failure of the ALJ to address the moderate limitations would be harmless. See <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1099 (9th Cir. 2014) (Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path may reasonably be discerned.")

**IV.  CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATE: March 17, 2020

                                /s/ Autumn D. Spaeth
                                THE HONORABLE AUTUMN D. SPAETH
                                United States Magistrate Judge